Good morning everyone. We're delighted to be sitting here in Seattle, especially me since the temperature is almost a hundred in Las Vegas. The cases will be called in the order listed on the docket. The first four cases, Luna Penado v. Bondi, Amara Saltillo v. Bondi, Gwyneth Velazquez v. Bondi, and United States v. Frick have been submitted on the briefs. The first case on the calendar for argument is United States v. Vazquez-Ramirez. Counsel for appellant, please approach and proceed. Good morning, Your Honors. Carter Powers-Baggs on behalf of Oscar Vazquez-Ramirez, the appellant. I will endeavor to save two minutes for rebuttal and I'll watch my own clock. Thank you, Counsel. We're here with the Second Amendment challenge, more fallout from Supreme Court's decision in Bruin, and I would like to touch upon four main areas today. The first is the district court's utilization of rational basis review. The second is how we square Duarte's en banc opinion with this case, and then the other two steps of Bruin, Bruin Step 1 and Bruin Step 2. Quickly, with the district court's utilization of rational basis review, this was an alarming claim by the district court. No circuit has ever found rational basis review would apply in this situation. No district court outside of this district court. The reason for that is dating back over hundred years to Wan Wing, where it was made clear that plenary immigration power, while in regards to exclusion at the border and who is let in and who is let out within the United States, we're still subject to important constitutional limitations, especially if we are going through a criminal justice process. Now, moving to Duarte en banc, it came down recently, both parties submitted notices of authority on this matter. I think there's two main takeaways from this case, and it's on Bruin Step 1 and on Bruin Step 2. The as a felon. Now, Mr. Vazquez-Ramirez, while presented before this case, was not a felon, but it is important the reasoning behind that decision. In doing so, it endorsed the national community theory in regards to who is part of the people. The same theory that Mr. Vazquez-Ramirez, as an individual with sufficient connections, as is laid out in Verdugo or Quidez, he meets that standard. The second part within the Step 1 analysis is the rejection of the virtuous citizenry theory that was within Vonce and has been used, it's mentioned by the government in briefing, and it has been used to kind of prevent any individual who is not part of voting or holding public office or juror that they can't then have guns. And Duarte pushes back against that and notes that that is those are collective rights rather than individual rights. Mr. Vazquez-Ramirez is asserting a individual right, the Second Amendment, the right to bear arms or lawful self-defense, quite distinct from the more collective rights where we would save those for the virtuous citizenry. Moving kind of... Is that right though? I mean, there's a lot of indications in Heller and Bruin about, you know, American citizens and I don't know, it's not just the language, it's some of the reasoning that gets into, like, why would somebody who's unlawfully present in the United States have rights as among the people? Your Honor, there is certainly a lot of that language thrown around in both Heller and in Bruin and in a lot of the other cases as well. I think there's two issues on that. One, that issue of whether or not the individual was part or was lawfully present in those cases was just not before the court. No, that's true, but it wasn't before us in Duarte either. So, you know, we're trying to do, you know, look at some of the, not just the language used, but actually the reasoning and it seems that the reasoning is tying the people to someone who's a member of a political community, which has a more precise meaning of somebody who has certain rights that we would regard as the rights of citizens, like the right to be a juror. Your Honor, I would point the court to Verdugo-Riquidez, kind of the genesis of this sort of language, and in Heller, a very important part of that opinion, because the people, as defined in Heller, they were making the leap from individual rights in kind of the Fourth Amendment, the people context, to the people within the Second Amendment. It was a linchpin of that opinion, but Verdugo-Riquidez also notes that individuals who are within our borders, who are not necessarily citizens, are still part of the people and still have been given constitutional protections in other areas. I think Verdugo survives Heller and Bruin, which, you know, asks us not to look at these, you know, concepts from a, you know, in a vacuum, but look to them historically, and if you look historically what the people meant, it was very limited to those that are part of the political community, which likely did not include illegal aliens. I think it does include, it still survives, Verdugo does still survive, and when you look at the founding, it was a different, it was a different America in some respects, but it was also a very similar America in other respects. We do have people who are present from, not just citizens, also people who that just kind of came off boats and arrived and are part of that. Who, which group in the founding era would be most analogous to legal aliens that you think were considered part of the people at the founding? I think individuals that had arrived rather recently had acclimated to the national community, but had not taken the kind of the further step of citizenship at that point, and there were various methods that you would go through to gain that citizenship, and there's just no indication that our historical expert at the district court level found that would kind of separate those two individuals at that time, and certainly not within the Second Amendment context. I understand the government. Yeah, I mean, it's clear like American Indians, for example, were not considered part of the people entitled to the Second Amendment rights. Do you agree with that? I would, I would agree with that. So that seems to be somewhat analogous to illegal aliens, you know, they're part of this, you know, separate sovereign, you know, you know, I forget the exact term they use, it's like a sub-sovereign within the country, and so they were not entitled to the same protections. Why wouldn't we make that analogy to illegal aliens? I think because when we look at what we're defining as the people, we're looking at a sufficient connections test of people that are here for quite some time, and we're not making the claim that that any individual that just crosses over is suddenly part of the people. It's a long-term process where you build these connections. But how is Verdugo consistent with what Heller tells us, which we look at the time of the founding, what these terms meant, and Verdugo was not, did not do that when they developed that that definition. I'm not quite under... Verdugo's definition of what they found to be the part of the people was not historically based in my assessment. It was just kind of like based off of modern sensibilities of what we think of the people. I think that's true in part, I think it also was drawing upon the Supreme Court precedent and other cases from that point, which, I mean, we could trace those all the way back to the founding, but in regards to a historical definition of the people in Verdugo, it's not my reading of that case that is really invested in the history in regards to the people. Counsel, may I ask you, if someone were arrested, an undocumented person were arrested one day after entering the country illegally with a weapon, would that person be entitled to assert the Second Amendment in your view? Under the theory that we are putting forth, they would have to have sufficient connections. And what would, in one day, it's your argument, in one day they would have developed sufficient connections? That is not our argument. So at what point, at what point would we draw the line that someone has sufficient connections to invoke the Second Amendment? It is not an easy line to draw. I think the court in Verdugo does an admirable job of trying to paint that line in regards to all the factors that it points to. I think in the case of Mr. Vasquez Ramirez, who has been here since he was a little boy, has went to school here, has family here, has done basically everything outside of taking the next step to become a citizen. He would be part of the people. Who would make that decision, a court or would a jury decide if somebody had been here long enough to get that protection? Your Honor, I have not thought about that specifically. I think I would urge the court or I would think that a court would probably be in the best situation to decide that. But it may well be a juror question. And I just haven't thought about that. I am into my rebuttal time. Well, can I ask you, if I may, even if you can get past the people issue, you do have to still deal with Duarte, which has some fairly broad holdings about essentially, as I read it, how if the legislature deems someone dangerous, they can then conclude categorically that that class of people does not have a right under the Second Amendment. And you would think that if felons fall into that category, then illegal aliens may well as well. I would point the court to the concept of just historical tradition. And I think when we look at Duarte, that was a found in possession case. When we look at this, we have a non-citizen unlawfully present with the United States. How we treated those two different things at the founding is quite different in regards to Duarte. It was really a case about how much can we restrict someone who has gone through this process and closing the door for kind of the as-applied challenges, saying we're not going to go that far. While in Mr. Vasquez-Ramirez's case, the non-citizens at the founding were conceptualized. It wasn't a completely foreign concept as you look at the Alien Enemies Act, the Alien Friends Act. But within those acts, there is no regulation of firearms. In fact, the Alien Friends Act even specifically provides for property to be maintained by those individuals and that they could still maintain possession on it after being removed from the United States. I am out of time. I would urge the court to— Counsel, we'll give you a minute or two for rebuttal. We hope to take you over your time. I appreciate that, Your Honor. Thank you. We'll hear from the government. Good morning, Your Honors, and may it please the court. My name is Michael Ellis. I'm an assistant United States attorney based in Spokane, Washington. So in order to prevail on this appeal, Mr. Vasquez-Ramirez has to carry the argument on every issue before the court today. He has to show that he is entitled to Second Amendment protection in the first place. In other words, that he is a member of the people and that he was engaged in covered conduct during his arrest in December of 2021. If he overcomes that, he has to show that Bruin applies at all, despite this statute regulating the conduct of immigrants within the United States, which is a function of Congress's plenary authority over immigration and immigration affairs. And if he overcomes that, he has to demonstrate that 922G5 is not relevantly similar to colonial-era regulations dispossessing persons who have not attested loyalty and allegiance to the United States and who were not law-abiding from possessing firearms. As he cannot overcome any of those challenges, his conviction should be affirmed. Counsel, can I ask, so is your argument, to me, the people argument and your immigration argument are the same question, right? If someone's part of the people, undoubtedly we have to follow Bruin and it would apply. I mean, the only question is if illegal immigrants are not part of the people, then rational basis would apply, right? How are they separate inquiries? So I think they're separate inquiries because, first of all, the Second Amendment has to apply at all for Mr. Vasquez-Ramirez to have any rights. And then beyond that, in every other case that has addressed Bruin, Duarte, Rahimi, there's not been a debate about whether that, in terms of citizenship and immigration, whether that defendant is a member of the people. Reading Duarte and Rahimi, there's no indication those defendants were not United States citizens. This statute is functionally different from those statutes because it is focused entirely on an immigration-related matter, whether or not someone… But that's not necessarily true. I mean, it involves the possession of a firearm, which is a Second Amendment right. That is true. But if – again, the Supreme Court and this court have, through a long line of cases, adjudicated various constitutional challenges involving other constitutional rights and held that despite there being constitutional protections, Congress can make different rules for aliens that might not apply to United States citizens and therefore different standards of review apply. Take cases like Matthews v. Diaz, which is about welfare benefits in the immigration context. Rational basis applies. Hampton, the ability to serve in the federal civil service for aliens. Rational basis… But that's because it's based on an antecedent determination that the person has lower rights to begin with under that. I mean, we haven't – no one's ever said that with respect to the Second Amendment yet in the Ninth Circuit. And so it doesn't seem to advance the argument really to say that Congress has plenary power over immigration because they don't have plenary power to violate somebody's rights if they have one. So we get back to the same question, which is are they part of the people or is there some other – does Duarte resolve it or some other argument? But I don't think it really helps to just say immigration, immigration. I think it's a secondary question after whether the Second Amendment applies at all. From the government's perspective, it's then a secondary question as to what standard applies for how Congress can regulate the Second Amendment rights of a given person. Can we address directly whether the Second Amendment applies in this scenario? Don't we generally focus on the activity that's being regulated to determine whether or not the Second Amendment applies? Yeah, so there's two parts of this. One is a person has to be a member of the people because the Second Amendment only applies to the people as opposed to other constitutional rights covering persons, the accused, citizens. So you have to be a member of the people to merit Second Amendment rights. And then, yes, another part of that test is you have to be engaged in covered conduct. So here Mr. Vasquez-Ramirez doesn't satisfy either of those. As was addressed earlier, the Supreme Court has repeatedly in Heller, Bruin, Rahimi limited the Second Amendment discussion to law-abiding citizens and Americans. And as this court just noted around a month ago in Duarte, that language has meaning. This court went out of its way to note that Duarte, Bruin, used the term law-abiding citizen 14 times. Again, was it necessary for those decisions? No, but this court is bound by well-considered dicta from the Supreme Court. But the focus wasn't really on the citizen part of it. It was mentioned but not really, there was no expostulation on it. It just was noted that it's citizen, but there was no engagement in what that actually means. So that's what we're grappling with now. What does that actually mean for purposes of the Second Amendment? So for the purposes of the Second Amendment, it means that if you're not a citizen, you do not have a member of the people for the purpose of having Second Amendment. What case says that explicitly? So explicitly in terms of Heller, Bruin, and Rahimi repeatedly using the word citizen to describe the scope of the people who have Second Amendment rights. So again, as Your Honor noted, that was not a necessary determination for those cases, and perhaps if it had been a one-off, a single passing reference. But again, they used that term over and over and over. What about somebody with a green card who's present in the United States lawfully? Would they have a Second Amendment right? So they would have a better claim perhaps than Mr. Vasquez Ramirez. If you take citizen at face value, then no, but that person with a green card is also not illegally and unlawfully in the United States. They're not covered by the criminal prohibition. Exactly. So there may be middle ground where someone may not have a constitutional right, but may also not have their possession of firearms criminally prohibited by current congressional statute. Your friend on the other side points out that in Heller, the Supreme Court referenced, quoted Verdugo, Riquidez, including the sufficient connection to the United States language. What do you make of that language? So a couple of things. First is that neither Verdugo nor any other Supreme Court case has explicitly found that the people do include unlawful aliens. It's been repeatedly assumed throughout a series of cases, both before this court and the Supreme Court, but never explicitly decided. It's not been explicitly decided the other way either. That is true. I think some of the keys are, as the court referenced during the earlier argument, it does seem to turn on an individual's political connections to the United States. That's where Heller comes in after Verdugo or Riquidez and says the people unambiguously refers to members of the political community. And as the court, again, was referencing earlier, that's a standard that can be adjudicated. Everyone's going to know what connections you have to the political community. Social connections are extremely hard to pin down when someone may have crossed that line from being not a member of the people to a member of the people. And that is really important if the court contemplates how someone, an actual person may be contemplating whether they have Second Amendment rights because how is that person supposed to know how long have I been here, how long of work experience do I have here, when am I going to qualify to be a member of the people? That's an extremely fact-specific inquiry that doesn't really lend itself to a test determining whether a specific individual has Second Amendment rights. Political connections does. Everyone's going to know if you have the right to serve on a jury or these various other factors. But by its terms, wouldn't that eliminate someone who doesn't have status? Perhaps, if that was the sole part of the test. I know this court, in cases like Ibrahim, have discussed the importance of being authorized by the United States government at one time or another to reside in the United States. There may be other factors at play. But importantly for this case, Mr. Vasquez-Ramirez has none of those factors. He's never been allowed to be in the United States. He's never been authorized to be present. And he has none of those political connections. So again, for the purpose of this case, whatever follow-on cases may happen with future hypothetical defendants, for this case, Mr. Vasquez-Ramirez can't tick any of those boxes. So what I find troubling about the argument, though, is the people is used in the Fourth Amendment context as well. And if we follow the maxim that the same term means the same thing, so is it the government's position that the Fourth Amendment doesn't apply to illegal aliens? So I think it depends on the... Well, first of all, the Fifth Circuit has been the only circuit I've found that's really addressed that particular point. And the Fifth Circuit found that because of the nature of those rights, protective versus affirmative, it would be rational to perhaps draw a distinction between that term. As for... Did you find that persuasive? I'm not sure I did, but... And I think at the end of the day, you know, the Supreme Court has, post-Verdugo, which was a Fourth Amendment case, discussed the people in Second Amendment terms in a slightly different way, with this repeated emphasis on citizenship, with this new emphasis on explicitly the political community. And so perhaps the answer is they are in different scope. I think for the purpose of this case, the court does not need to go that far, because for this case, the court only needs to address the Second Amendment use of the term people, which, again, the Supreme Court has repeatedly tied to the term citizen. So with that, unless the court has any other questions for me... Appears not. Thank you, counsel. Thank you. Rebuttal. Let's have two minutes. I'd like to just briefly touch upon the people. As Your Honour just pointed out, the people has to mean the same thing throughout the Bill of Rights. It was adopted at the same time. Our entire discussion of Heller relies upon the fact that the people means the same thing throughout the Bill of Rights. Well, the difficulty with that argument is the Supreme Court has not used the term citizen when talking about the rights under the Fourth Amendment. So doesn't that justify a different meaning in those amendments? I think they have not used it in terms of the Fourth Amendment, and I think it really calls into question what does the Second Amendment mean then, because it has to mean the same thing across the board. I would just... Does it? If the Supreme Court says for the Second Amendment, being a citizen is important, but does not express that same view in the Fourth Amendment, why does it have to mean the same thing if the Supreme Court has not defined them in the same way? It would mean the same thing because of just statutory canons of how we interpret text as a whole. But those are just tools that we use. That's not definitive in terms of being binding on us. Not definitive in terms of being binding upon the Court, but I think definitive in terms of how they are used in Heller to underpin that entire opinion, making the Second Amendment kind of, for the first time in front of the Supreme Court, an individual right. If we take Heller at face value, we also have to take the whole opinion. Do we disregard the use of the term citizen over and over in the Second Amendment cases? Do we just pretend that that doesn't exist in those cases? I wouldn't pretend it doesn't exist, but two quick things before I run out of time. One is that, again, citizens was not before the Court at the time, and I think when you look at law-abiding citizen as a language, it is pointing to what is presumed beyond doubt as the Second Amendment protections, not necessarily the full contours of that right. I am out of time. Thank you so much. Can I ask one quick question? Is there any case that says that the Fourth Amendment does directly apply to illegal aliens, and so that would contradict this? I read Verdugo-Riquidez as saying that, although it is not as explicit as... Was that an illegal alien, Verdugo? I thought it was a ship or something, but it's been a while. I apologize. I don't want to speak definitively on that. Never mind. I read Verdugo as allowing for Fourth Amendment rights for noncitizens, if you would follow through on that. Thank you so much for your time. Counsel, thank you to both counsel for your helpful arguments. The case just argued is submitted for a decision by the Court.
judges: RAWLINSON, BRESS, BUMATAY